*521 OPINION OF THE COURT
Francesca E. Connolly, J.
The motion[1] of the defendant Visiting Nurse Services of Westchester Home Care for an order (1) so ordering a proposed subpoena duces tecum directed to the Westchester County-Department of Social Services (hereinafter DSS), which seeks production of all records relating to the investigation into the care received during the life of Samantha Williams, plaintiffs decedent, and her death; (2) permitting the release of the records sought in the proposed subpoena directed to DSS pursuant to Social Services Law §§ 422 and/or 422-a; or (3) alternatively, ordering an in camera inspection of the records sought by the proposed subpoena is determined as follows:
The plaintiff Samuel Bibbins, individually and as administrator of the estate of his daughter, Samantha Williams, commenced this action to recover damages for medical malpractice and negligence that allegedly led to Samantha’s death. The Medical Examiner determined that Samantha died of starvation at the age of six weeks. The defendants are Roger Sayegh, M.D., Riverside Pediatrics, and Visiting Nurse Services of Westchester Home Care (hereinafter VNS). As relevant to the instant motion, VNS has asserted an affirmative defense that Samantha’s injuries were caused by some third person or persons over whom VNS had no authority or control.
VNS’s Motion
VNS now moves to have a proposed subpoena duces tecum to be served on nonparty Westchester County Department of Social Services so ordered and to compel production of certain records. The proposed subpoena, which is annexed as an exhibit to the motion, seeks DSS records regarding its investigation into the care and death of plaintiffs decedent, including
“[a] 11 documents relating to the investigation into the care received during the life of infant Samantha Williams and her death, including any records relating to any conclusions reached regarding same *522 and all records submitted or generated for use or in connection to any criminal or family court proceeding relating to Samantha Williams.”
The proposed subpoena further seeks the production of all records permitted to be disclosed under Social Services Law § 422-a.
According to VNS, Samantha, who was only six weeks old, died of starvation while in the care of her mother, nonparty Lanette Williams. In the instant action, the plaintiff alleges, among other things, that VNS was negligent in its administration of home nursing services to the child, which proximately caused her death. Accordingly, VNS contends that the records maintained by DSS will almost certainly bear upon the issues of liability in this case, arguing that the records will shed light on the circumstances surrounding Samantha’s death and what, if any, liability the defendants might have in her death. VNS argues that the information is exclusively within the control of DSS and is material and necessary to the prosecution and defense of the action.
In support of the motion, VNS relies upon CPLR 2307, which requires the court to issue subpoena duces tecum to be served on state agencies. VNS also relies upon Social Services Law §§ 422 and 422-a, which VNS contends provide for the disclosure of records pertaining to abuse or neglect of a child under certain enumerated circumstances. VNS specifically contends that Social Services Law § 422-a provides that records relating to the abuse or maltreatment of a child and any investigation and services related to the abuse or maltreatment may be disclosed where it is not contrary to the best interests of the child and where, as here, the child named in the report has died. VNS also contends that the disclosure is proper pursuant to Social Services Law § 422 (4) (A) (e), which provides that such records may be released to “a court, upon a finding that information in the record is necessary for the determination of an issue before the court.”
Finally, VNS contends that the records sought may be disclosed to the estate of plaintiffs decedent, whom VNS asserts will join in the motion, pursuant to Social Services Law § 422 (4) (A) (d), which provides that the information shall be made available to “any person who is the subject of the report or other persons named in the report.” Alternatively, defendant VNS seeks an in camera inspection of the DSS records so the court may determine what, if any, records are discoverable in this action.
*523 The plaintiff joins in VNS’s motion and adopts its arguments. The plaintiff specifically contends that the records sought are necessary and vital to the prosecution of the action in light of the affirmative defenses asserted by the defendants, and that the records are in the exclusive control of DSS. Finally, the plaintiff contends that the records should be disclosed to him as he is the decedent’s father and the representative of her estate. In the alternative, the plaintiff joins that branch of the defendant VNS’s motion which seeks an in camera inspection of the records.
The defendants Roger Sayegh, M.D., and Riverside Pediatrics also join in the motion and adopt the arguments of defendant VNS.
DSS’s Opposition
DSS opposes the motion on the ground that the proposed subpoena seeks highly confidential child protective services (hereinafter CPS) records and such disclosure would violate the statutory confidentiality accorded to the records pursuant to Social Services Law §§ 422 and 422-a. DSS notes that Social Services Law § 422 limits the court’s authority to direct the release of child protective services information to a number of specifically enumerated individuals, agencies, and other entities. DSS also relies upon 18 NYCRR 432.7, which provides that information obtained, written reports and photographs concerning child protective services shall be confidential, and shall only be disclosed to those persons defined under title 6 of article 6 of the Social Services Law, which includes Social Services Law §§ 422 and 422-a. DSS argues that VNS, decedent’s physician or medical services provider, and civil litigants are not on the enumerated list of individuals, agencies or entities set forth in section 422 who are permitted access to the confidential records. DSS further asserts that there is no statutory authority to expand the list of those to whom access to the confidential records is authorized. DSS relies upon Catherine C. v Albany County Dept. of Social Servs. (38 AD3d 959 [3d Dept 2007]), which it contends stands for the proposition that section 422 only permits access to the confidential records for the court’s own use to determine a specific issue. Accordingly, DSS contends that it is not legally permitted to disclose the records sought in this action.
DSS contends that although defendant VNS asserts that the documents may be disclosed if the plaintiff joined the application, no such request for the records had been made by the *524 plaintiff at that time and DSS had not received any papers from the plaintiff indicating that he was joining in the application. DSS further contends that, while Social Services Law § 422 (4) (A) (d) permits disclosure to any person who is the subject of the report or other persons named in the report, Social Services Law § 412, which defines “subject of the report” and “other persons named in the report,” does not include the estate of a deceased child.
DSS argues that the legislature’s intent underlying Social Security Law § 422-a, which provides the commissioner of a social services agency with the discretion to disclose certain categories of confidential information relating to abused and neglected children and creates an exception to statutory confidentiality, was “to increase the capacity for oversight and monitoring of the child welfare system, to increase the information available to the public, and to increase the accountability of the social services districts, not to provide civil litigants carte blanche access to this highly confidential information” (affirmation in opposition ¶ 6). Accordingly, DSS contends that, absent a finding that the record is necessary for the determination of an issue before the court pursuant to Social Services Law § 422 (4) (A) (e), the disclosure requested in the proposed subpoena is prohibited.
Alternatively, DSS requests that the court conduct an in camera review of the records and direct the release of only those records relevant and necessary to the issue in the underlying action, provided that the confidential nature of the records be maintained, and that the records be returned to DSS.
Analysis
Disclosure Pursuant to Social Services Law § 422
“New York, like the vast majority of other States in the Nation, maintains a Central Register listing reported incidents of child abuse received in writing or over a 24-hour telephone hotline” (Matter of Lee TT. v Dowling, 87 NY2d 699, 702 [1996]).
“The Central Register is one part of a larger system designed to protect the safety of children in New York State and its procedures are triggered by receipt of a report of suspected abuse or maltreatment. The reports may be mandated (physicians, school authorities, etc.) or permissive. If the allegations contained in the report ‘could reasonably constitute a report of child abuse or maltreatment’, or *525 ‘if true would constitute child abuse or maltreatment’, the report must be transmitted to the appropriate local child protective agency for investigation. The local agency then determines whether the report is ‘indicated’ or ‘unfounded’. Indicated reports are maintained in the Central Register. Unfounded reports are deleted and all records and reports are destroyed.” (Id. at 704 [citations omitted].)
The information required to be statutorily included in the Central Register includes, but is not limited to:
“[A]ll the information in the written report; a record of the final disposition of the report, including services offered and services accepted; the plan for rehabilitative treatment; the names and identifying data, dates and circumstances of any person requesting or receiving information from the register; and any other information which the commissioner believes might be helpful in the furtherance of the purposes of this chapter.” (Social Services Law § 422 [3].)
Reports to the Central Register, as well as “any other information obtained, reports written or photographs taken concerning such reports in the possession of the office or local departments shall be confidential” and shall only be disclosed to certain enumerated individuals or agencies (see Social Services Law § 422 [4] [A] [a]-[z]). Of note, the persons entitled to access to these reports include a physician who reasonably suspects a child before him or her may be abused or maltreated, an agency responsible for the care or supervision of a child who is reported to the Central Register of Child Abuse and Maltreatment, a grand jury, a probation service, a district attorney’s office, and certain other agencies and review panels (see Social Services Law § 422 [4] [A] [a], [c], [f], [i], [k], [1], [n], [s], [w]-[y]).
While the release of reports to persons entitled to them pursuant Social Services Law § 422 (4) is typically an administrative function of DSS, the statute also governs a court’s authority to order their release (see Matter of Sarah FF., 18 AD3d 1072, 1074 [3d Dept 2005] [“(DSS)’s legal authority to release its confidential reports—like the court’s authority to direct such release—is specifically limited by Social Services Law § 422”]). Accordingly, this court’s power, in the context of civil discovery, to order the production of “all matter material and necessary in the prosecution or defense of an action” (CPLR 3101 [a] *526 [emphasis added]) is constrained, under the circumstances, by the restrictions on confidentiality set forth in Social Services Law § 422 (4).
As an initial matter, despite the fact that the information contained in DSS’s confidential records could be “material and necessary” to VNS’s defense, VNS does not fall within one of the specifically enumerated categories of persons entitled to access the records. This court is without discretion to “expand the carefully crafted statutory and exclusive list of those to whom access is authorized” (Matter of Sarah FF., 18 AD3d at 1074; see Angela N. v Suhr, 71 AD3d 1489, 1490 [4th Dept 2010] [in an action to recover damages related to lead poisoning of a child, the defendant landlords were not entitled to authorizations for CPS records “because defendants are not individuals to whom disclosure is permitted pursuant to section 422 (4) (A)”]; Lamot v City of New York, 297 AD2d 527, 527 [1st Dept 2002] [in an action against the City of New York for negligently failing to remove the infant plaintiff from the custody of her mother, the plaintiff was not entitled to disclosure of reports of abuse relating to the plaintiffs siblings who lived in the same household, since Social Services Law § 422 (4) (A) “does not authorize disclosure of covered records to siblings of the child whose alleged abuse is the subject of the report”]). Accordingly, VNS is not entitled to disclosure of the records on its own accord.
Although VNS is not an enumerated entity, it seeks disclosure under two additional theories. First, VNS argues that the records may be disclosed pursuant to Social Services Law § 422 (4) (A) (e), which provides that such records may be released to “a court, upon a finding that the information in the record is necessary for the determination of an issue before the court.” Although this subparagraph does not specify whether the court has authority to redisclose the records to the parties in an action, courts have narrowly interpreted Social Services Law § 422 (4) (A) (e) as allowing the court to have access to such records “for its own use” to decide a particular issue upon a specific finding of necessity, without permitting disclosure to others not specifically enumerated on the “carefully crafted statutory and exclusive list” (see Catherine C., 38 AD3d at 960 [Social Services Law § 422 (4) (A) (e) has been “(n)arrowly interpreted to allow the court to have access to such records ‘for its own use’ to decide a particular issue, (and) ‘(n)othing in (the) statute permits a court to expand the carefully crafted statutory and exclusive list of those to whom access is authorized’ .... The *527 DSS records at issue contain a report of abuse of John and investigative information related to that abuse. Supreme Court failed to make a clear determination of necessity as to this material as required by the statute” and, “(t)hus the release of these records was in error”]; Matter of Sarah FF., 18 AD3d at 1074 [“(A)mong the many specifically enumerated entities to whom release is permitted is ‘a court, upon a finding that the information in the record is necessary for the determination of an issue before the court’ (Social Services Law § 422 [4] [A] [e]). Here, however, the court made no such finding of necessity and nothing in this record supports the conclusion that such broad disclosure authority to a CASA volunteer is ‘necessary’ ”]; Matter of Evan E. (Susan F.), 114 AD3d 149, 155 [3d Dept 2013] [“While Family Court is permitted access to this material for its own use to make a determination, it cannot ‘expand the carefully crafted statutory and exclusive list of those to whom access is authorized’ ”]; Selapack v Iroquois Cent. School Dist., 17 AD3d 1169, 1170-1171 [4th Dept 2005] [In this action for defamation and intentional infliction of emotional distress based upon defendants’ alleged filing of a report of plaintiffs’ suspected child abuse and maltreatment with the statewide Central Register, it was error for the court to compel the defendants School District and BOCES to disclose the name or names of the person or persons who reported plaintiffs’ alleged abuse of a child to CPS. Although, pursuant to section 422 (4) (A) (e), “a court, upon a finding that the information in the record is necessary for the determination of an issue before the court,” is entitled to obtain the name of the reporter of the abuse, the statute did not grant the court the “implied power” to disclose the name of the reporter to plaintiffs. “(O)ur holding is consistent with the intent of Social Services Law § 422 to protect the confidentiality of the names of the persons reporting suspected child abuse”]).
Second, VNS contends that it is entitled to the records because the plaintiff has joined in support of its motion. The plaintiff, as the father of the decedent, may be among those persons enumerated in Social Services Law § 422 (4) (A) (d) who are entitled to the reports and other information in the possession of DSS, as either the “subject of the report” (see Social Services Law § 412 [4] [the “subject of the report” means “any parent of . . .a child reported to the statewide central register . . . who is allegedly responsible for causing injury, abuse or maltreatment to such child”]) or as “other persons named in the report” (see Social Services Law § 412 [5] [“other *528 persons named in the report” means “the child who is reported to the statewide central register . . . and such child’s parent . . . who has not been named in the report as allegedly responsible for causing injury, abuse or maltreatment to the child or as allegedly allowing such injury, abuse or maltreatment to be inflicted on such child”]).[2] Although the record does not reveal whether the report in question was determined to be “indicated” or “unfounded,” the court notes that, while a person who is the “subject of the report” may access the report in either case, an “other person[ ] named in the report” is not explicitly entitled to access the report (see Social Services Law § 422 [5] [a]). However, even if the plaintiff is entitled to the reccords, he may not confer upon VNS the right to access the records simply by joining in VNS’s motion. Pursuant to Social Services Law § 422, except under specifically defined circumstances, a person entitled to access records of the Central Register is not authorized to redisclose that information to others (see e.g. Social Services Law § 422 [4] [A] [“To the extent that persons or agencies are given access to information pursuant to (certain enumerated subparagraphs), such persons or agencies may give and receive such information to each other in order to facilitate an investigation conducted by such persons or agencies”]). Indeed, the redisclosure of information in the Central Register to a person who is not authorized to access it is a crime (see Social Services Law § 422 [12] [“(a)ny person who willfully permits . . . the release of any data and information contained in the central register to persons or agencies not permitted by this title shall be guilty of a class A misdemeanor”]; see also 18 NYCRR 432.7 [“(t)he commissioner of social services in each social services district shall insure that any reports made, as well as any other information obtained, reports written or photographs taken concerning such reports, be confidential and shall only be made available to those persons defined under title 6 of article 6 of the Social Services Law, because any person who willfully permits and any person who encourages the release of any data and information contained in the local or statewide register to persons or agencies not permitted by title 6 of article 6 of the Social Services Law shall be guilty of a class A misdemeanor”]). Accordingly, since VNS is not independently entitled *529 to access the report or other related information in the possession of DSS, it may not access that information simply because it has the plaintiffs consent.
While the plaintiff, in his individual capacity, may be independently entitled to access the subject records, the plaintiff has made no motion to direct the release of the records to him or his attorney. Social Services Law § 422 (7) provides the mechanism by which a “subject of a report” or “other persons named in the report” may receive the information contained in the report. However, that section of the statute also provides that the Commissioner of DSS, in his or her discretion, may prohibit the release of certain data that would, for example, identify the person who made the report or who cooperated in a subsequent investigation (see Social Services Law § 422 [7]). Insofar as DSS notes in its opposition that it has received no request from the plaintiff for the records prior to joining in VNS’s motion (see affirmation in opposition ¶ 9), the plaintiffs recourse under these circumstances is to make a request for the records directly to DSS, and thereafter seek judicial intervention only if required[3] (see also Selapack v Iroquois Cent. School Dist., 17 AD3d 1169, 1172 [4th Dept 2005] [Gorski, J., concurring] [“plaintiffs have not demonstrated that they have exhausted the remedies available to them by discovery or by an application pursuant to Social Services Law § 422 (7)”]).
Disclosure Pursuant to Social Services Law § 422-a
The defendants’ contention that this court should so order a subpoena directing DSS to produce plaintiffs decedent’s abuse report and the records of the investigation pursuant to Social Services Law § 422-a is also without merit.
Unlike section 422 (4), which provides access to the report itself and any other written or photographic records in the possession of DSS, the scope of disclosure permitted pursuant to section 422-a is much more limited. Under Social Services Law § 422-a, if the Commissioner makes a finding that disclosure is not contrary to the best interests of the child, the child’s siblings or other children in the household, and one of several factors is present, including that the child named in the report has died, the Commissioner is authorized to disclose certain limited infor *530 mation (see Social Services Law § 422-a [1] [d]; [2]). Specifically, the Commissioner may disclose:
“(a) the name of the abused or maltreated child;
“(b) the determination by the local child protective service or the state agency which investigated the report and the findings of the applicable investigating agency upon which such determination was based;
“(c) identification of child protective or other services provided or actions, if any, taken regarding the child named in the report and his or her family as a result of any such report or reports;
“(d) whether any report of abuse or maltreatment regarding such child has been ‘indicated’ as maintained by the statewide central register;
“(e) any actions taken by the local child protective service and the local social services district in response to reports of abuse or maltreatment of the child to the statewide central register including but not limited to actions taken after each and every report of abuse or maltreatment of such child and the dates of such reports;
“(f) whether the child or the child’s family has received care or services from the local social services district prior to each and every report of abuse or maltreatment of such child;
“(g) any extraordinary or pertinent information concerning the circumstances of the abuse or maltreatment of the child and the investigation thereof, where the commissioner or the local commissioner determines such disclosure is consistent with the public interest.” (Social Services Law § 422-a [2].)
Release of this information is permitted only where the report is “indicated” (see Social Services Law § 422-a [3] [c]), and the disclosure of any information that would identify the source of the report or the name of the child’s siblings, parents, or any other member of the child’s household, who are not allegedly responsible for the maltreatment, is not permitted (see Social Services Law § 422-a [4]). In determining whether disclosure would be contrary to the best interests of the child, the child’s siblings, or other children in the household, the Commissioner is required to consider the effect disclosure may have on efforts to unite and provide services to the family (see Social Services *531 Law § 422-a [5]). Whenever disclosure of information is made pursuant to Social Services Law § 422-a, the Commissioner is required to make a written statement to the chief county executive officer where the incident occurred setting forth the statutory basis upon which he or she is basing disclosure (see Social Services Law § 422-a [6]).
As DSS correctly argues, disclosure pursuant to Social Services Law § 422-a involves matters of agency discretion and disclosure is limited to certain categories of confidential information (see affirmation in opposition ¶ 13). To the extent that disclosure pursuant to this section is limited, VNS’s request for “[a]ll documents relating to the investigation into the care received during the life of infant Samantha Williams and her death” (see proposed subpoena to be so ordered [emphasis added]) is incongruent with the statute and must be denied.
Moreover, a motion to compel disclosure is an inappropriate vehicle by which to obtain disclosure pursuant to Social Services Law § 422-a. Rather, the parties should make an administrative request directly to DSS for the information. The information permitted to be disclosed pursuant to Social Services Law § 422-a represents a subset of the records permitted to be disclosed pursuant to section 422. The legislative history of Social Services Law § 422-a, which was added by Elisa’s Law Child Protective Services Reform Act of 1996 (see L 1996, ch 12), indicates that the purpose of the law was to increase oversight and monitoring of the child welfare system, increase information available to the public, and impose greater accountability on the agencies involved in the system. In the Governor’s Approval Memorandum (Bill Jacket, L 1996, ch 12, 1996 NY Legis Ann at 14), the Governor noted that the bill achieves its public accountability and disclosure goals by, inter alia, allowing the information regarding the abuse or maltreatment of a child to “be disclosed by the Commissioner of the Department of Social Services or a commissioner of a local social service district, in specified circumstances in which the public has a strong and legitimate interest. . . [including] where a child has died.”
Disclosure pursuant to section 422-a is heavily dependent on agency discretion involving factors such as the best interests of other children in the household or, if relevant, whether such disclosure could be potentially disruptive to efforts to reunite the family or provide services to the family. DSS, rather than *532 the court, is in the best position to address these considerations, which involve matters beyond the litigation at hand, and which the court may not be able to ascertain simply from its own review of the CPS file.
Moreover, tailoring the disclosure of records to fit within the limited categories of disclosure permitted under section 422-a will necessarily require a greater degree of filtering and redaction than disclosure pursuant to Social Services Law § 422. Notably, section 422-a permits the disclosure of enumerated types of “information,” which may or may not include a release of actual CPS records depending on how a given agency chooses to make disclosure pursuant to section 422-a. Accordingly, the court is wary of condoning disclosure in a civil action pursuant to a statute that may require the agency to, in effect, generate new documents or compilations of information that are not already in existence (see 44A NY Jur 2d, Disclosure § 294 [“Because a party may be required to produce only those items which are in the possession, custody, or control of the party or person served, a party may not be compelled ... to create new documents”]).
For these reasons, the court finds that Social Services Law § 422-a is not an appropriate vehicle for court-compelled disclosure in the context of civil litigation such as the case at bar (cf. Social Services Law § 372 [3] [specifically providing that disclosure of confidential records maintained in connection with the placement and commitment of abandoned, delinquent, destitute, neglected, or dependent children is available through CPLR article 31 discovery]; Wheeler v Commissioner of Social Servs. of City of N.Y., 233 AD2d 4, 7-8 [2d Dept 1997]). The proper procedural vehicle for the parties to obtain the limited information disclosable pursuant to section 422-a is to make a request directly to the agency. If DSS refuses to disclose the information, the parties, after having exhausted their administrative remedies, may seek judicial review of the refusal to exercise that discretion, or the improper exercise of that discretion, through a CPLR article 78 proceeding (see e.g. CPLR 7803 [3]; Matter of Gannett Co. v County of Ontario, 173 Misc 2d 304 [Sup Ct, Ontario County 1997] [CPLR article 78 proceeding used to review the release of information pursuant to Social Services Law § 422-a]). Accordingly, DSS will not be compelled *533 to disclose information pursuant to Social Services Law § 422-a in the context of this civil action.[4]
Since this court will not compel disclosure pursuant to either Social Services Law § 422 or Social Services Law § 422-a, the branch of VNS’s motion which seeks an in camera review of records is denied as unnecessary.
In view of the foregoing, it is hereby ordered that the motion of the defendant Visiting Nurse Services of Westchester Home Care is denied in its entirety; and it is further ordered that all other relief requested but not decided herein is denied.

. This court, sua sponte, has redacted the Social Security numbers set forth in the verified bill of particulars, annexed as exhibit F to the motion. Public Officers Law § 96-a (1) (a) prohibits making available to the general public in any manner an individual’s Social Security account number. Movant is advised in the future to comply with General Business Law § 399-ddd (6), which prohibits, inter alia, the filing in any New York court of any document “that contains a social security account number of any other person, unless such other person is a dependent child, or has consented to such filing, except as required by federal or state law or regulation, or by court rule.”

. In addition to arguing that the plaintiff himself may be an “other person[ ] named in the report,” VNS additionally argues that the plaintiff, as the administrator of the decedent’s estate, stands in the shoes of the decedent. For the reasons that follow, the court need not decide this issue.

. Although the statute and case law contemplate potential disclosure of CPS records, in the context of civil discovery, to only one party to the litigation, the statutory prohibitions to redisclosure, along with the interests of justice, would likely prevent their use as evidence at trial.

. Without predetermining whether an administrative request by the parties to DSS for information pursuant to Social Services Law § 422-a would be successful, the court notes that the child who was allegedly named in the report has died, which would appear to satisfy one of the primary conditions for disclosure (see Social Services Law § 422-a [1] [d]).